

**SO ORDERED.**

**SIGNED this 27 day of March, 2015.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:                                                                 CASE NO. 15-00976-5-DMW

MILLS INTERNATIONAL, INC.

              DEBTOR                                            CHAPTER 11

ORDER

This matter comes on to be heard upon (a) the Emergency Motion for Turnover ("Turnover Motion") filed by Mills International, Inc. ("Debtor") on February 20, 2015, and the response filed by L&W Farms, Inc., Holmes Agribiz, Inc., and Archie Randall Holmes (collectively "Holmes"); and (b) the Emergency Motion for Relief From Stay ("Stay Motion") filed by Holmes on February 23, 2015, and the responses filed by the Debtor and CNH Industrial America Capital LLC ("CNH").

The court conducted a hearing in Raleigh, North Carolina on February 25, 2015. Laurie B. Biggs, Esq. and Joseph Z. Frost, Esq. appeared for the Debtor, Leslie Lane Mize, Esq. appeared for CNH, Jeffrey M. Cook, Esq. appeared for Holmes, and Brian C. Behr, Esq. appeared for the United States Bankruptcy Administrator.

The court entered a preliminary Order on February 25, 2015, and this Order supplements that prior Order. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.  FACTS

1. The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on February 20, 2015 ("Petition Date").

2. The Debtor is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business in Lenoir County, North Carolina. The Debtor owns and operates a farming and outdoor equipment dealership located in Kinston, North Carolina. The Debtor is an authorized dealer of Case IH, Cub Cadet, Bush Hog, Yanmar/Textron, and Wood Equipment Company products.

3. As with most dealerships, the Debtor sells these product through a "floor plan" arrangement.[1]  CNH, TCF Inventory Finance, Inc./Textron Cadet ("TCF"), Bush Hog, LLC/Bush Hog, Inc. ("Bush Hog"), Agricredit Acceptance LLC ("Agricredit"), and WEC Company d/b/a/ Woods Equipment Company ("WEC") (collectively "Floor Plan Creditors") have floor plan arrangements with the Debtor.

4. The Turnover Motion and the Stay Motion involve CNH and TCF who have a first priority lien upon their respective product lines. CNH's product line includes Case and Farmall equipment, and TCF's product line includes Cub Cadet and Yanmar equipment.

5. In addition to the Case and Farmall inventory, CNH's lien extends to, *inter alia*, the following that relate to its inventory:

---

[1] Floor plan financing is an "arrangement for the lending of money to an automobile dealer, or other supplier of goods, so that he may purchase cars, or other articles, to include in his inventory; the loan being secured by the automobiles or other goods wile in the dealer's possession, and is gradually reduced as the cars or other merchandise are sold." *Black's Law Dictionary* 641 (6th ed. 1990).

      a.     Equipment, software and other goods, trade-ins, accessions and all proceeds;

      b.     Accounts, general intangibles, chattel paper, leases, instruments, documents and agreements;

      c.     Present and future accounts; and

      d.     Inventory and equipment obtained from or financed by CNH.

6.     In addition to the Cub Cadet inventory, TCF's lien extends to, *inter alia*, the following that relate to its inventory:

      a.     Books and records;

      b.     Repossessions, returns, replacements, exchanges, substitutions, parts, attachments, accessories, and accessions; and

      c.     Products and proceeds, including accounts, chattel paper, cash and insurance proceeds.

7.     The Debtor had additional equipment at the business location. Mr. David Mills ("Mr. Mills"), an officer of the Debtor, testified that the Debtor held at least two grain carts ("Grain Carts") that are owned by Unverferth Manufacturing Company, Inc. ("Unverferth"). It is unknown if the Grain Carts were under a consignment or other type of arrangement between Unverferth and the Debtor, but it is clear from the testimony that the Debtor does not own the Grain Carts.

8.     The Debtor has several vehicles and trailers, all appearing to require certificates of title, that it uses in its operations.[2] An air compressor is affixed to one of those vehicles. Mr.

---

[2] There was no testimony about whether the trailers have certificates of title. The court will assume they have certificates of title, and to the extent it is later determined the trailers are not titled, the trailers may be subject to the judicial lien held by Holmes.

3

Mills testified that the vehicles and trailers are unencumbered, and have no liens recorded on the certificates of title.

9. The Debtor maintained a bank account at First-Citizens Bank and Trust Company ("FCB Account"). Three weeks prior to the Petition Date, the FCB Account had a balance of approximately $68,000.00. Mr. Mills also stated that 90%-100% of the FCB Account represents sale proceeds of inventory financed by the Floor Plan Creditors.

10. During the 90 days prior to the Petition Date, Holmes obtained a judgment in the Johnston County District Court ("State Court Judgment") against the Debtor in the amount of $1,119,500.00. The State Court Judgment is dated November 23, 2014 and may or may not be subject to avoidance pursuant to 11 U.S.C. §§ 547 and 548. The Debtor timely appealed the State Court Judgment, and the appeal remains pending.

11. Within the three weeks prior to the Petition Date, the Lenoir County Sheriff ("Sheriff"), under a Writ of Execution, levied upon the FCB Account and the following personal property ("Personal Property") located at the Debtor's business:

    a.    13 new Case tractors with implements ("CNH Inventory");

    b.    20 new Cub Cadet/Yanmar tractors and lawn mowers with implements ("TFC Inventory");

    c.    2 Unverferth Grain Carts;

    d.    7 vehicles ("Vehicles") used in the Debtor's business;

    e.    4 trailers ("Trailers") used in the Debtor's business;

    f.    1 used Case tractor and 1 used Case combine[3] ("Used Inventory"); and

    g.    1 air compressor.

---

[3] It is unclear how the Debtor acquired the Used Inventory and who, if anyone, holds a lien on those assets.

12. While Bush Hog, Agricredit, and WEC are also Floor Plan Creditors, it does not appear that the Lenoir County Sheriff seized any of the inventory belonging to Bush Hog, Agricredit, or WEC.

13. It appears that the Floor Plan Creditors hold a perfected lien upon substantially all of the Debtor's inventory. The majority of the remaining Personal Property consists of the Vehicles and Trailers that have certificates of title and are critical to the Debtor's operations.

B.  JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C.  DISCUSSION

1. The Debtor's Collateral is Property of the Estate

a. In *Hugo Key & Son, Inc. v. Precast Structures, Inc. (In re Hugo Key & Son, Inc.)*, 129 B.R. 322 (Bankr. D.R.I. 1991), a secured creditor obtained a writ of execution and seized construction equipment, vehicles, and tools of a judgment debtor in partial satisfaction of a previously-acquired consent judgment. The property was seized approximately one month prior to the judgment debtor seeking relief under Chapter 11 of the Bankruptcy Code. The issue before the court was "whether the pre-petition seizure left the [d]ebtor divested of all interest in the property, as of the date of its petition." *Id.* at 322. The court held that the debtor retained an interest in property seized pre-petition because the property had not been sold prior to the commencement of the bankruptcy

5

case. *Id.* at 322-23. The court also concluded that the secured creditor "must return to the bankruptcy estate all property seized pursuant to the Writ of Execution, as to which it had not fully completed the levy and execution process, at the date of filing." *Id.* at 323.

  b.  The facts in *Hugo Key & Son, Inc.* are analogous to the facts of the present case. Accordingly, the FCB Account and the Personal Property are property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Until more information is provided about the arrangement between Unverferth and the Debtor, the Debtor continues to have at least an equitable interest in the Grain Carts.

2.  <u>Liens on Personal Property and FCB Account</u>

  a.  <u>CNH and TFC Inventory</u>

    i.  While a security agreement was not presented as evidence, the Debtor stated that CNH and TCF hold purchase money security interests in their relative inventory as evidenced by Uniform Commercial Code ("UCC") financing statements filed with the Delaware Secretary of State.

    ii.  At this time, it appears that the lien held by CNH and TCF is superior to Holmes' judgment lien.

  b.  <u>FCB Account</u>  The testimony indicates that at least 90% of the money in the FCB Account is subject to the interests of the Floor Plan Creditors pursuant to the accounts and proceeds description in the UCC financing statements. The remaining 10% may be subject to Holmes' judgment lien.

  c.  <u>Motor Vehicles</u>

    i.  Holmes claims to hold a perfected security lien on the Debtor's Vehicles and Trailers based upon the Sheriff's levy. The Vehicles and Trailers

constitute motor vehicles.[4]  Mr. Mills testified that the Vehicles are unencumbered, and Holmes did not provide any evidence that it had its lien recorded on the certificates of title.

    ii.    N.C. Gen. Stat. § 20-58(a)(2) (2013) states that a security lien in a motor vehicle may only be perfected by an indication of the security interest on the certificate of title, not by possession.  Further, N.C. Gen. Stat. § 20-77(a) (2013) states that "Whenever the title or interest of an owner in or to a vehicle shall pass to another by operation of law . . . otherwise than by voluntary transfer, the transferee shall secure a new certificate of title."  In other words, the *only* way to perfect a security interest in a vehicle in North Carolina is by a notation on the certificate of title, not mere possession.  Holmes is not perfected with respect to the Vehicles and Trailers.  Further, the Vehicles and Trailers are crucial to the Debtor's operations.

    d.    <u>Grain Carts</u>  Without more information the court cannot determine the rights that the Debtor and Holmes have in the Grain Carts.  If the relationship with Unverferth is a consignment, Holmes may have a valid lien, unless Unverferth has provided notice by the filing of a UCC financing statement or possibly as provided in N.C. Gen. Stat. § 66-72 (2013).  The UCC lists specific rules for determining the rights of consignors with respect to a consignee's creditors.  *See* N.C. Gen. Stat. § 25-9-319 (2013).  With this uncertainty the estate and its creditors are best served with the return of the Grain Carts to the Debtor.

---

[4] Motor vehicles are defined as "Every vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23) (2013).  A vehicle is defined as "Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway . . ." N.C. Gen. Stat. § 20-4.01(49) (2013).

7

   e. <u>Used Inventory</u>  The Used Inventory carries the Case brand.  While it is unclear how the Debtor became in possession of the Used Inventory (either by trade-in, purchase, barter or some other means), the lien held by CNH probably extends to the Used Inventory; therefore, the Used Inventory should be returned to the Debtor.  If for some reason the Used Inventory can be excluded from the CNH lien, then Holmes' judicial lien may attach.

3. <u>The Personal Property and the FCB Account Should be Returned</u>

   a. "Pursuant to 11 U.S.C. § 542(a), this court is permitted to order a third-party to turnover to a debtor's bankruptcy estate any property in the third-party's possession which qualifies as 'property of the estate' under § 541." *Nelson v. Arlington Auto Exch. (In re Nelson)*, 521 B.R. 733, 736 (Bankr. D.S.C. 2014).

   b. Given the liens held by the Floor Plan Creditors, the uncertainty of the relationship with Unverferth and the failure by Holmes to have its judgment lien recorded on the Vehicles' certificates of title, Holmes must return the Personal Property and the FCB Account to the Debtor.

4. <u>The Debtor's Continuing Operation and Adequate Protection</u>

   a. The Debtor is a long standing family-run business with deep ties in the local community.  The Debtor has successfully operated for decades and filed bankruptcy after it experienced rising expenses (such as health care insurance for employees)[5] and an unanticipated judgment in favor of Holmes.

   b. At this early stage of the case, Holmes as a judgment creditor may have a small risk arising from the turnover if some of the Personal Property and a greater portion of the FCB Account is found to be unencumbered.  The continued operation in Chapter

---

[5] Mr. Mills testified at the hearing that employee health insurance costs have risen 28% in recent years.

11 and the escrow described below will serve as adequate protection for Holmes' judgment lien. If the court's initial determination is correct, and Holmes has only a nominal portion of the Personal Property and the FCB Account to secure its judgment lien, then Holmes' chance of a distribution on its claim will be much higher if the Debtor continues to operate.

      c.      The testimony indicates that up to 10% of the FCB Account may be unencumbered. The sum of $3,400.00 should be escrowed as adequate protection in the event that the FCB Account is not fully encumbered.

      d.      Holmes should have a post-petition replacement lien in the same priority and dignity as it had pre-petition, meaning that the Floor Plan Creditors have superior rights as provided in their loan documents.

5.      <u>Conclusion</u>

      a.      Substantially all of the funds in the FCB Account and the Personal Property are subject to senior liens held by the Floor Plan Creditors. The majority of the FCB Account appears to be proceeds from sales by the Floor Plan Creditors and not subject to Holmes' judgment lien. Holmes has not proven that it has a perfected lien on the Vehicles and Trailers. The apparent junior lien position in which Holmes finds itself allows the court few options other than to order the return of the Personal Property and the FCB Account to the Debtor.

      b.      If the Floor Plan Creditors are paid in full or the value as of the Petition Date is significantly higher than the amount needed to satisfy the Floor Plan Creditors, then Holmes may indeed by secured to some extent, but it is too early for the court to make that determination.

   c. Allowing the Debtor to continue to operate will allow for all creditors to receive more than if the Debtor were closed because of the Sheriff's levy, especially when Holmes' lien may be subject to avoidance.

   d. To the extent that Holmes is entitled to receive adequate protection, the continued operation through the use of those assets by the Debtor in its business and a segregation by the Debtor of the sum of $3,400.00 for the benefit of Holmes shall constitute adequate protection; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Turnover Motion is granted, and the Stay Motion is denied;

2. Holmes and the Sheriff shall release Personal Property and the FCB Account;

3. The Debtor shall escrow the sum of $3,400.00 as adequate protection for Holmes; and

4. Holmes shall have a post-petition replacement lien in the same priority and dignity as it had pre-petition, meaning that the Floor Plan Creditors have superior rights as provided in their loan documents.

END OF DOCUMENT